**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

NINGBO YANG VOYAGE TEXTILES CO., LTD.,
a Chinese Limited Company,

                              Plaintiff,

   -against-

SAULT TRADING, A/K/A SALUT TRADING INC,
a New York Business Corporation,

                            Defendant.
------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

18-CV-1961 (ARR) (ST)

**TISCIONE, United States Magistrate Judge:**

Plaintiff Ningbo Yang Voyage Textiles Company ("Ningbo Yang") sues Defendant Sault Trading to recover the unpaid balance of a contract for the sale of goods. Ningbo Yang makes a claim under the United Nations Convention on Contracts for the International Sale of Goods ("CISG" or the "Convention"), Apr. 11, 1980, S. Treaty Doc. No. 98-9 (1983), 19 I.L.M. 668; it also asserts claims for state law breach of contract, account stated, unjust enrichment, and declaratory judgment. *See* Complaint ("Compl."), Dkt. No. 1, ¶ 22–42.[1] Sault Trading did not respond to the Complaint in any fashion. The Clerk of Court entered default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. *See* Clerk's Entry of Default, Dkt. No. 8. On October 15, 2018, Ningbo Yang filed a Motion for Default Judgment. *See* Dkt. No. 9. Judge Allyne R. Ross referred the Motion to me for a report and recommendation. For the reasons stated below, I recommend that the Motion be GRANTED in part and DENIED in part.

**A. Background**

Ningbo Yang is a Chinese company that specializes in the manufacturing of silk

---

[1] Count One of Ningbo Yang's Complaint seeks a declaratory judgment that "Sault Trading" and "Salut Trading Inc" are alter egos of each other, and that each company is liable for the debts and obligations of the other. *See* Compl. ¶ 19–21. After the filing of its Complaint, the Clerk's office added "Salut Trading Inc." as an alias during a routine quality control check. *See* Dkt. No. 3. Because the Clerk's administrative revision appears to have nullified the need for the declaratory judgment requested by Plaintiff, and because Plaintiff does not request this relief in its Memorandum in Support of Default Judgment, the Court need not address this request.

1

products. Compl. ¶ 3. Ningbo Yang entered into an alleged agreement with Sault Trading, a New York corporation, for the sale of 55,560 pieces of silk polyester curtain products for the purchase price of $103,341.60. Compl. ¶¶ 4, 9. The invoice allows for a variance of five-percent, either more or less, of the actual quantity of pieces ordered. Compl. ¶ 9. After receiving a deposit in the amount of $10,109.00, Ningbo Yang shipped 56,760 pieces of silk curtain products on July 27, 2017 for a total price of $105,773.60. Compl. ¶ 12. Ningbo Yang has not received any payment on the contract following its shipment in July 2017. Compl. ¶ 15.

On March 31, 2018, Ningbo Yang filed suit alleging five causes of action for the alleged breach of contract. *See* Compl. Two days later, on April 2, 2018, the Court issued a Summons notifying Sault Trading that a suit had been filed against it, and informing it that it had twenty-one days after service of the Summons to file an answer to the Complaint or file a motion under Rule 12 of the Federal Rules of Civil Procedure. *See* Summons in a Civil Action, Dkt. No. 4. Sault Trading received service of the Summons on May 29, 2019 through its authorized agent, the Secretary of State of the State of New York. *See* Affidavit of Service - Secretary of State, Dkt. No. 6. To date, Sault Trading has not responded to the Complaint, nor otherwise appeared in this action.

On September 26, 2018, Ningbo Yang requested that the Court enter a default against Sault Trading for failure to appear or otherwise defend the action. *See* Request for Certificate of Default, Dkt. No. 7. The Clerk of Court entered default on September 28, 2018. *See* Clerk's Entry of Default, Dkt. No. 7. On October 15, 2018, Ningbo Yang filed a Motion for Default Judgment. *See* First Motion for Default Judgment, Dkt. No. 9. Attached to the Motion was an Affirmation in Support stating the facts in support of the claims in the underlying complaint. *See id.* ¶ 6. On January 30, 2019, Ningbo Yang submitted a Memorandum of Law in Support of Default Judgment. *See* Dkt. No. 13. On May 1, 2019, in response to orders issued by this Court, Ningbo Yang submitted evidence that its counsel had attempted to serve its Motion for Default Judgment on Sault Trading at its last known address in compliance with Local Rule 55.2(c). *See* Dkt. Nos. 14–15.

## B. Subject Matter Jurisdiction

Before reaching the merits, this Court must first examine the asserted basis for jurisdiction. Federal courts have limited jurisdiction to hear disputes under the Constitution or as authorized by Congress. *Cty. of Nassau, N.Y. v. Hotels.com, LP*, 577 F.3d 89, 91 (2d Cir. 2009). Thus, a claim that does not state a basis for the court's subject matter jurisdiction must be dismissed, see *Jenkins v. Murphy*, 356 F. App'x 500 (2d Cir. 2009), even if a party has not raised the issue before the court. *See Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009).

This Court is authorized to hear the present dispute arising between a U.S. Corporation and a Chinese company because it "arises under" federal law. *See* 28 U.S.C. § 1331; U.S. Const. art. III. Ningbo Yang asserts a claim under the United Nations Convention on Contracts for the International Sale of Goods ("CISG"), an international treaty. A treaty is a source of federal law providing a basis for jurisdiction. *See Hanwha Corp. v. Cedar Petrochemicals, Inc.*, 760 F. Supp. 2d 426, 430 (S.D.N.Y. 2011); *see also Profi-Parkiet Sp. Zoo v. Seneca Hardwoods LLC*, No. 13-CV-4358 (PKC) (LB), 2014 WL 2169769, at *3 (May 23, 2014), *adopted by* 2014 WL 2765793 (E.D.N.Y. June 18, 2014). The Convention is a self-executing multilateral treaty that governs the rights and obligations of parties who enter into international sales contracts. *See id.*; *Filanto, S.p.A. v. Chilewich Int'l Corp.*, 789 F. Supp. 1229, 1237 (S.D.N.Y. 1992). "When two foreign nations are signatories to this Convention . . . the Convention governs contracts for the sale of goods between parties whose places of business are in these different nations, absent a choice-of-law provision to the contrary." *Claudia v. Olivieri Footwear Ltd.*, No. 96-CV-8052 (HB) (THK), 1998 WL 164824, at *4 (S.D.N.Y. Apr. 7, 1998) (finding that the CISG applies to a dispute between companies located in the United States and Italy); *see also Delchi Carrier SpA v. Rotorex Corp.*, 71 F.3d 1024, 1027 n.1 (2d Cir. 1995). Here, there is no evidence that the agreement between the parties contained a choice-of-law provision, and the United States and China are both signatories to the CISG; thus, the CISG applies to the present dispute over an alleged contract for the sale of goods. *See* CISG, art. 3 (listing both the United States and China

as signatories); *Saint Tropez Inc. v. Ningbo Maywood Indus. & Trade Co.*, No. 13-CV-5230 (NRB), 2014 WL 3512807, at *8 (S.D.N.Y. July 16, 2014) (noting both the United States and China are CISG signatories); *Weihai Textile Grp. Imp. & Exp. Co. v. Level 8 Apparel, LLC*, No. 11-CV-4405 (ALC) (FM), 2014 WL 1494327, at *6 (S.D.N.Y. Mar. 28, 2014) (same); *see also Profi-Parkiet Sp. Zoo*, 2014 WL 2169769, at *3 (finding that, even when state contract claims are interposed, "federal district courts have subject matter jurisdiction over . . . claims [made under the CISG]") (collecting cases).

### C. Standard of Review

A defending party who fails to adequately respond to a complaint risks default. Courts are directed to engage in a two-step process for the entry of a judgment against a party who fails to defend: first, the Clerk of Court enters default, and second, a judgment is entered on the default. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). Rule 55(a) of the Federal Rule of Civil Procedure sets forth the first step as follows:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Fed. R. Civ. P. 55(a). While a "typical" default is entered "because a defendant failed to file a timely answer[,] . . . a district court is also empowered to enter a default against a defendant that has failed to 'otherwise defend.'" *Mickalis Pawn Shop*, 645 F.3d at 129 (citing Fed. R. Civ. P. 55(a)) (other citation and bracket omitted).

The second step is the entry of default judgment. In this step, the court "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled . . . ." *Id.* at 128. Following the clerk's entry of default, a court considers as true all factual allegations in the complaint relating to liability. *See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). But the court still must determine whether the factual allegations, taken as true, establish the defendant's liability as a matter of law. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (following entry of default, the court is

"required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law"). "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

By entry of default, the defaulting party does not concede liability, as stated above, nor does the defaulting party admit the plaintiff's factual allegations with respect to the amount of damages. *See Cement & Concrete Workers Dist. Council Welfare Fund*, 699 F.3d at 234. After finding liability, a court must conduct an inquiry to "ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted); *see United States v. Myers*, 236 F. Supp. 3d 702, 709 (E.D.N.Y. 2017) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.") (quoting *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).

**D. Analysis**

    1. Breach of Contract

        a. *Liability*

A plaintiff asserting a breach of contract claim under the CISG must show: "(1) the existence of a valid and enforceable contract containing both definite and certain terms, (2) performance by plaintiff, (3) breach by defendant and (4) resultant injury to plaintiff." *Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 924 (N.D. Ill. 1999); *see* CISG, art. 74 (providing damages for breach of contract). A breach of contract claim under the CISG contains the same elements as those under New York State law. *See, e.g.*, *24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 429 F.3d 39, 42 (2d Cir. 2005) (stating elements under New York law). Article 25 of the CISG states that "[a] breach of contract committed by one of the parties is fundamental if it results in such detriment to the other party as substantially to deprive him of what he is entitled to expect under the contract . . . ." CISG, art. 25.

This Court must first determine whether the allegations and evidence submitted by Ningbo Yang are sufficient to satisfy its burden of showing a "valid and enforceable contract containing both definite and certain terms." Under Article 11 of the CISG, a "contract of sale need not be . . . evidenced by a writing and is not subject to any other requirement as to form." CISG, art. 11; *see Claudia v. Olivieri Footwear Ltd.*, No. 96-CV-8052 (HB) (TH), 1998 WL 164824, at *5 (S.D.N.Y. Apr. 7, 1998).[2] Instead, a contract "may be proved by any means, including witnesses." CISG, art. 11. "Such evidence may include oral statements made prior to a writing." *Claudia*, 1998 WL 164824, at *5. Thus, "unlike American contract law," the CISG does not have a "parol-evidence rule, and 'allows all relevant information into evidence even if it contradicts the written documentation.'" *TeeVee Toons, Inc. v. Gerhard Schubert GmbH*, No. 00-CV-5189 (RCC), 2006 WL 2463537, at *7 (S.D.N.Y. Aug. 23, 2006) (citation omitted).

Ningbo Yang has submitted scant documentation to support the existence of the alleged contract. It provided the Court with an invoice, see Dkt. No. 1-1, a copy of a bill of lading, see Dkt. No. 1-2, and an Affirmation in Support of Motion for Default Judgment, see Dkt. No. 9-2. In its Complaint, Ningbo Yang asserts that Sault Trading placed an order by "signing a contract under PI-NBPO170008 with [Ningbo Yang] for 55,560 pieces of silk products to be delivered not later than August 15, 2017 from [Ningbo Yang]. The total order price is $103,341.60." Compl. ¶ 9. The invoice is listed as number "PI-NBPO170008" and the terms of the document corroborate the allegations contained in Ningbo Yang's Complaint. Dkt. No. 1-1. At the top of

---

[2] Article 12 allows a signatory to opt-out of Article 11's default provision by making a declaration under Article 96 of the Convention. *See* CISG, art. 12. Although China previously made such a declaration, see *Weihai Textile Grp. Imp. & Exp. Co. v. Level 8 Apparel, LLC*, No. 11-CV-4405 (ALC) (FM), 2014 WL 1494327, at *7 (S.D.N.Y. Mar. 28, 2014); *Zhejiang Shaoxing Yongli Printing & Dyeing Co. v. Microflock Textile Grp. Corp.*, No. 06-CV-22608, 2008 WL 2098062, at *3 (May 19, 2008), *amended by* 2008 WL 11333554 (S.D. Fla. July 23, 2008), the Chinese government withdrew its Article 96 declaration in January 2013. *See* United Nations Treaty Collection, *10. United Nations Convention on Contracts for the International Sale of Goods* https://treaties.un.org/Pages/ViewDetails.aspx?src=TREATY&mtdsg_no=X-10&chapter=10&clang=_en#12 (last visited August 7, 2019); Ministry of Commerce People's Republic of China, *China Contract Law and CISG Become more Consistent in Provisions on Contract Form and their Applicability*, http://english.mofcom.gov.cn/article/newsrelease/significantnews/201302/20130200038302.shtml (last visited August 7, 2019); *see also Weihai Textile Grp.*, 2014 WL 1494327, at *7 n.1.

the invoice, the address and contact information for Ningbo Yang is found in the letterhead, the invoice date is listed as May 20, 2017, and the buyer is identified as "Sault Trading" with an address located in Brooklyn, New York. *Id.* The total quantity of pieces ordered is listed as 55,560 pieces with a total purchase price of $103,341.60. *Id.* Despite Ningbo Yang's representations, there is no signature on the document; nor is there any other indication that Sault Trading signed any other document indicating its assent to the agreement. *See id.*

The Complaint also alleges, "[t]he terms of the May 20, 2017 contract was previously agreed to by SAULT and [Ningbo Yang], and was further accepted and agreed to by [Ningbo Yang] after receipt from SAULT. Plaintiff received the deposit of $10,109." Compl. ¶¶ 10–11. These allegations are likewise unsupported because, as noted, the record does not contain *any* evidence that Sault Trading agreed to the terms of the invoice—by an affidavit of an individual with personal knowledge or through the submission of e-mail exchanges between the parties, for instance—nor is there *any* documentation that a deposit was paid to Ningbo Yang.

However, despite the general lack of corroborative evidence, the Court finds that the allegations in the Complaint are sufficient to establish that Sault Trading entered into and breached an enforceable contract. By defaulting, Sault Trading conceded all factual allegations relating to liability. *See Cement & Concrete Workers Dist. Council Welfare Fund*, 699 F.3d at 234; *Bio Hi-Tech Co. v. Comax, Inc.*, No. 07-CV-2260 (RRM) (CLP), 2009 WL 3497490, at *5 (E.D.N.Y. Oct. 28, 2009) (finding liability for breach of oral contract claim following default based on allegations in complaint); *see also First Tech. Capital, Inc. v. Airborne, Inc.*, 378 F. Supp. 3d 212, 219 (W.D.N.Y. 2019) (finding liability for breach of contract based solely on allegations in complaint). Therefore, this Court finds that the terms of the May 20 invoice were, in fact, agreed to by Sault Trading and Ningbo Yang and the parties intended to be bound by the terms of the invoice. *See* Compl. ¶ 10 (stating that contract terms were agreed to by Ningbo Yang and Sault Trading). Furthermore, this Court credits the allegation that "[Ningbo Yang] made shipment of 56,760 pieces of Faux silk polyester curtain products to SAULT on or about July 27th, 2017, for a total worth price of $105,773.60, and fully complied with the terms of the

7

parties' contract." Compl. ¶ 12; *see also* Bill of Lading, Dkt. No. 1-2 (corroborating the allegations). This Court finds that Sault Trading "acknowledged receipt of the shipment without objection or complaint[,]" Compl. ¶ 13, and Sault Trading "did not pay the balance due or any amount of money whatsoever after receiving the shipment." Compl. ¶ 15.

Contrast these facts to another CISG breach of contract case in this Circuit—*Claudia v. Olivieri Footwear Ltd.*, No. 96-CV-8052 (HB) (THK), 1998 WL 164824 (S.D.N.Y. Apr. 7, 1998). In *Claudia*, the court refused to find a valid and enforceable contract where the plaintiff merely submitted an invoice and bill of lading but the record contained evidence of the parties' disagreement. *Id.* at *6–7. The court noted the level of informality allowed by the CISG and recognized that "[u]nder certain circumstances, invoices may be viewed as contracts." *Id.* at *5. The plaintiff argued that the "invoice terms are unambiguous"—those terms including "names and addresses of the parties, the date, a description of the items, the price for the goods, the terms for payment, and a method of delivery." *Id.* at *6. But contrary to the plaintiff's statements, the defendant argued that it did not have a contractual relationship with the plaintiff and denied ever receiving the goods at issue in the case. *Id.* at *2. In support, the defendant submitted facsimiles and an affidavit. *Id.* "Viewing the evidence in the light most favorable to the defendant," the Court denied the plaintiff's motion for summary judgment and found that there was a genuine issue as to material facts surrounding the contract and whether the parties adhered to the terms of their alleged agreement. *Id.* at *11.

The present case is different, in part, because of the standard of review following the entry of default, but also because there is absolutely no information in the record suggesting disagreement or contradicting the unambiguous terms of the invoice. Therefore, taking the factual allegations in the Complaint as true, Ningbo Yang asserted sufficient information to establish Sault Trading's liability for breach of contract under the CISG. This Court finds that a valid and enforceable contract was entered into between Sault Trading and Ningbo Yang, with sufficiently specific terms, including parties, quantity, price, delivery and payment method. Ningbo Yang performed under the contract by delivering a quantity of goods that fulfilled the

invoice provisions; Sault Trading breached the agreement by failing to pay the balance due following delivery of the goods. Finally, Ningbo Yang was injured by the breach because it failed to receive the amount due under the contract.

### b. *Damages*

Despite finding liability, this Court must still determine whether damages are appropriate. As stated, the Court assumes that factual allegations are true with respect to a defendant's liability, but the court does not assume the truth of allegations relating to damages. A district court has a separate obligation to assess whether damages are appropriate and, if so, to calculate the correct amount of damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). The court may conduct a hearing, see Rule 55(b)(2) of the Federal Rules of Civil Procedure, but it may also simply rely on detailed submissions, like affidavits, declarations, and audits, if those filings are sufficient to provide reliable evidence of damages. *See Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993). Regardless of the method, an award of damages must be ascertained with "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). "If a plaintiff fails to demonstrate its damages to a reasonable certainty, then the court should decline to award any damages, even where liability has been established through default." *Culajay v. P.M.F. Steel Corp.*, No. 16-CV-6597 (JS) (GRB), 2018 WL 1936457, at *2 (Feb. 21, 2018) (citation and internal quotation marks omitted), *adopted by* 2018 WL 1796222 (E.D.N.Y. Mar. 20, 2018); *accord House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (holding that a damages award must be based on admissible evidence).

In *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105 (2d Cir. 1997), the Second Circuit reversed a district court's award of damages that was based on a minimal inquiry. The Court summarized the district court's inquiry as follows:

> The default judgment entered by the District Court was in the amount of $51,753.86. To arrive at this number, the District Court simply accepted at face value Transatlantic's statement in its complaint that it "has sustained damages as

9

nearly as can now be estimated in the amount of $45,976.83," and then added interest and costs to arrive at the $51,753.86 figure.

*Id.* at 111. Despite the discretion allowed, the Court held that the district court has an "obligation to ensure that the damages" sought in a particular case are "appropriate"—a court cannot merely "accept" a plaintiff's unopposed "statement of the damages." *Id.*

Additionally, a declaration executed by plaintiff's counsel, standing alone, is insufficient evidence to support a damages award where counsel does not have personal knowledge of the matter. The Second Circuit, in *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151 (2d Cir. 1999), reversed a damages award where "the [district] court had before it only the allegations in the complaint and the affidavit of plaintiff's counsel, who did not purport to have personal knowledge of the facts . . . ." *Id.* at 154. Likewise, a court in this District denied a request for damages where the plaintiff merely submitted "a Declaration by plaintiff's attorney" providing "few facts or allegations not contained in the complaint" and failed to provide *any* "documentary evidence or affidavits on the issue of damages." *Culajay*, 2018 WL 1936457, at *3. The court noted that the plaintiff had not submitted "an affidavit and other documentation in support of his claim for damages [or] a statement of damages, including a detailed calculation, clearly setting forth the specific amounts that are sought with supporting detail." *Id.*

In this case, Ningbo Yang merely submitted a declaration signed by counsel in support of its request for damages. *See* Affirmation in Support of Motion for Default Judgment, Dkt. No. 9-2. The declaration re-states the principal allegations from Ningbo Yang's complaint. It states that the two parties entered into a contract for a specific quantity of silk products for a price of $105,773.60. *Id.* at ¶ 6. It further states that Ningbo Yang received a deposit of $10,109.00 and Sault Trading has failed to pay the outstanding balance of $95,664.60. *Id.* Despite the fact that the document is styled as a declaration of Ningbo Yang, see *id.* at ¶ 1 (stating that Ningbo Yang "hereby declares as

10

follows" and then stating "I am the plaintiff in this action"), the document was signed by counsel, and, as in *Credit Lyonnais*, the document does not provide any basis for finding that counsel has personal knowledge of the matter.

Because Ningbo Yang has not submitted admissible evidence to properly support its claim for damages, and has therefore not met its burden of showing damages to a reasonable certainty, this Court respectfully recommends that the District Court deny the damages request, despite finding liability on the underlying claim.

2. Other Claims

In addition to its CISG claim, Ningbo Yang's Complaint contains state law claims for breach of contract, unjust enrichment, and account stated. *See* Compl. ¶¶ 29–42. These state law claims are premised on the same factual allegations as the CISG claim. *Id.* In its Memorandum of Law of in Support of Default Judgment, Ningbo Yang does not indicate whether any of these causes of action entitles it to different relief than the CISG claim; indeed, it does not even mention these separate causes of action. *See* Dkt. No. 13.

"Where a plaintiff seeks recovery for the same damages under different legal theories, only a single recovery is allowed." *Seifts v. Consumer Health Sols. LLC*, 61 F. Supp. 3d 306, 326 (S.D.N.Y. 2014) (quoting *Conway v. Icahn & Co.*, 16 F.3d 504, 511 (2d Cir. 1994)). Courts frequently dismiss duplicative claims that arise "from the same facts" and seek "the same relief" as another claim. *LG Capital Funding, LLC v. Wowio, Inc.*, No. 16-CV-6632 (AMD), 2018 WL 3202077, at *9 (Apr. 24, 2018), *adopted by* 2018 WL 2224991 (E.D.N.Y. May 15, 2018) (dismissing unjust enrichment claim that was duplicative of breach of contract claim); *see also Ainbinder v. Money Ctr. Fin. Grp., Inc.*, No. 10-CV-5270 (SJF) (AKT), 2013 WL 1335997, at *9 (Feb. 28, 2013), *adopted by* 2013 WL 1335893 (E.D.N.Y. Mar. 25, 2013) (finding conversion and breach of contract claims duplicative and collecting cases). Here, Ningbo Yang does not assert that it is entitled to different or greater relief with respect to one of its claims as compared to the others. *Cf. NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (holding account stated and breach of contract claims were not duplicative where contract

11

had provision allowing for award of attorneys' fees). As such, the Court recommends dismissing Ningbo Yang's state law claims without prejudice to filing a renewed Motion for Default Judgment demonstrating that these claims are not duplicative of the CISG claim.

### E. Conclusion

This Court respectfully recommends that Ningbo Yang's Motion for Default Judgment be GRANTED in part and DENIED in part. This Court respectfully recommends entering default judgment against Sault Trading with respect to liability but denying Ningbo Yang's request for damages and granting leave so that Ningbo Yang has an opportunity to provide the court with competent evidence on damages. Additionally, this Court respectfully recommends dismissing Counts Three through Five of the Complaint without prejudice.

### F. Objections to this Report and Recommendation

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

/s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Brooklyn, New York
October 18, 2019